UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x

UNITED STATES OF AMERICA

              v.

ERIC CHERRY,

              Defendant.
------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/31/2021

18 CR 786-02 (CM)

DECISION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

McMahon, C.J.:

In the afternoon of Tuesday, September 18, 2018, Eric Cherry and his co-conspirators robbed a jewelry store at gunpoint. Cherry and his co-conspirator, Glenn Bullard, entered the store, and Cherry brandished a gun at the store employees while Bullard jumped over the counter and grabbed a tray of jewelry. When attempting to flee, Cherry discovered that the glass door to the street was locked. Cherry fired his gun at the glass exterior door of the store, aiming the gun towards a busy street. The shot shattered the glass and allowed the robbers to escape. (PSR at ¶¶ 11-17).

Cherry and his coconspirators were arrested and subsequently indicted for the jewelry-store heist. On September 9, 2019, Cherry pleaded guilty to brandishing a firearm during a Hobbs Act robbery in violation of 18 U.S.C. § 924(c)(1)(A)(i). On July 30, 2020, the Court sentenced Cherry to seven years' imprisonment—the mandatory minimum sentence. Cherry is currently serving his sentence (under guard at Brooklyn Hospital, because of medical issues); his

projected release date is September 24, 2024.

Before the Court is Cherry's motion asking the Court to grant him compassionate release, pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), P.L. 115-391. Cherry says that he has a unique and grave medical condition that constitutes an "extraordinary and compelling" reason to release him from prison to home confinement.

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then consider whether the defendant has met his burden of establishing

2

"extraordinary and compelling circumstances" warranting release.[1]   Until recently, this Court—

and many of my district court colleagues—looked to United States Sentencing Guidelines §

1B1.13 (the applicable Guidelines section for sentencing reductions pursuant 18 U.S.C. §

$3582(c)(1)(A)(i)$), for guidance on what constituted "extraordinary and compelling

circumstances."[2]  That changed on September 25, 2020, when the United States Court of

Appeals for the Second Circuit held that § 1B1.13 is not applicable to a motion brought by a

defendant in the district court. *United States .v. Brooker* No. 19-32180-CR, 2020 WL 5739712,

at *6 (2d Cir. Sept. 25, 2020).  The Second Circuit reasoned that the language of § 1B1.13—

language that has not been updated since the passing of the First Step Act—addressed only

---

[1] "A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *See, e.g.*, United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992).

[2] The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. *See* § 1B1.13 comment (n.1). For example, the medical circumstances ground reads as follows:

(A)    Medical Condition of the Defendant.—

  (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

  (ii)    The defendant is—

    (I)    suffering from a serious physical or medical condition,

    (II)    suffering from a serious functional or cognitive impairment, or

    (III)    experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 comment (n.1).

3

sentencing reduction motions initiated by the Bureau of Prisons. *Id.* In making clear that the district court was not constrained by the narrow grounds for granting compassionate release in § 1B1.13, the Second Circuit declared unequivocally that "district courts have discretion to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release," and that "neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id* at \*7.

What *Brooker* did not change, however, is the mandate in § 3582(c)(1)(A)(i) that a court contemplating a defendant's release pursuant to that section must first consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they are applicable, and determine whether they counsel for or against release. A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

### Cherry Has Exhausted His Administrative Remedies

At the conclusion of Cherry's sentencing proceeding, at the urging of defense counsel and based on medical records provided by the defense, the Court directed BOP to designate Cherry to BOP medical facility at Butner, North Carolina, within 10 days of sentencing. Sentencing Tr. at 16: 7/30/20 Order. The Court further ordered that Mr. Cherry not be returned to MDC or MCC or a non-medical facility. The Court stated that it would entertain an application for home confinement if the BOP sent him back to MDC or MCC. Sentencing Tr. at 20- 21.

4

Soon after sentencing, Cherry was brought to Brooklyn Hospital, where he has been held ever since, undergoing treatment and waiting on designation and transportation to a BOP medical facility. Although Cherry was designated by the BOP to FMC Butner, he has remained in Brooklyn Hospital—in part because his medical condition made it at times difficult for him to be moved, and in part because his counsel prevailed on BOP officials not to move him prior to the Court's ruling on a request that the Court recommend to BOP that Cherry be allowed to serve his sentence on home confinement.

In a letter dated January 7, 2021, the Government opposed the motion for a court recommendation to the BOP for home confinement, and informed the Court that Cherry's designation was switched from FMC Butner to FMC Devens because Devens was better suited to deal with his medical needs.

On December 14, 2020—the same day Cherry asked the Court to recommend home confinement to the BOP—Cherry also applied to the Warden of the MDC for release to home confinement on compassionate release grounds. That application was denied by letter dated January 20, 2021. Cherry notified the Court that he was withdrawing his previous request for a recommendation of home confinement and would be instead filing a motion for compassionate release— the motion now before the Court. Since Cherry's present motion propounds the same grounds pursued in his motion to the Warden that was denied on January 20, 2021, he has exhausted his administrative remedies, and the present motion for compassionate release is properly before the Court.

5

### Cherry's Motion

Cherry, now 60 years of age, suffers from a rare and extreme form of ulcerative colitis, which appears to have worsened since his arrest in this case in 2018. His treating physician, Dr. Andras Fenyves, states that he was "on the brink of not making it" since his hospitalization in March 2020. Dr. Fenyves states that Cherry's "risk of deterioration or dying from this severe form of colitis is high, and somewhat unpredictable." Mr. Cherry remains bedridden on a feeding tube. It is the opinion of Dr. Fenyves, that "[h]is prognosis is guarded and even with continuity of care [the doctor] is not sure he will survive more than 5 years with his disease."

The Court does not dispute that Cherry's medical condition might very well constitute an "extraordinary and compelling" basis for granting compassionate release.

But the BOP stands ready, willing, and most importantly, able to care for Cherry. In a letter from a member of the medical staff at FMC Devens, Ramzi Khazen, FMC Devens is able to treat care needs of male inmates classified as Care Level 4, which is the highest classification. (*See* Def. Ex. 3). As set forth by Dr. Kazen, "[i]nmates with Care Level 4 needs are severely impaired, and may require daily nursing care (for example: those with cancer in active treatment, dialysis, quadriplegia, stroke or head injury patients, major surgical patients, acute psychiatric illness requiring inpatient treatment, and high risk pregnancy)." Dr. Khazen explained that all specialty areas of medicine are available at FMC Devens and inmates are "routinely seen at some of the best hospitals in the country, including but not limited to Beth Israel Deaconess Medical Center, Massachusetts General Hospital, and University of

6

Massachusetts Medical Center." Dr. Khazen says that "[i]n the past we have coordinated with community-based gastroenterologists to manage inmates with ulcerative colitis, consulting with these specialists in order to adjust medication regimens, conduct advanced laboratory testing, and perform colonoscopies." Ultimately, Dr. Khazen concludes that he sees "see nothing in Dr. Fenyvas' letter suggesting FMC Devens will be unable to manage Cherry's medical condition."

*The 18 U.S.C. § 3553(a) Factors*

Even if Cherry has arguably met his threshold burden of demonstrating an "extraordinary and compelling" reason to be considered for compassionate release, the sentencing factors at 18 U.S.C. § 3553(a)—which the Court must consider in connection with a motion for a sentence reduction, *see* 18 U.S.C. § 3582(c)(1)(A)— counsel against a sentence reduction. Principal among those considerations are "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2) (A-C).

Cherry committed a dangerous and brazen offense. He and his co-conspirators robbed a jewelry store at gunpoint in the middle of the day. Video surveillance captured Cherry threatening store employees and customers with a gun (PSR at ¶ 14); stopping a store customer from leaving the store; and shooting through the glass door of the store into The Bowery, a street in lower Manhattan, without any apparent consideration for the presence or safety of passersby.

7

(*Id.* at ¶ 16). The robbery was a traumatic event for the store owner: he was forced to relocate to a different storefront, and suffered significant economic and emotional injuries. (*Id.* at ¶ 29).

Moreover, Cherry's criminal history reveals that the instant robbery was not a one-off affair. In 1982 Cherry was convicted of assault after shooting a victim in the face with a shotgun resulting in the victim being hospitalized, PSR ¶ 36; in 1983, he was convicted of attempted robbery in the first degree and sentenced to 5 to 10 years' imprisonment, PSR ¶ 37; in 1989, the he was convicted of attempted robbery in the third degree after committing an armed robbery with two others, PSR ¶ 38; and in 1991, he was convicted of attempted robbery in the first degree after he and another robbed an individual at gunpoint, PSR ¶ 39. He even exhibited violence in a 2007 arrest for a non-violent crime: in that arrest he was convicted of possession of a forged instrument after he fled a traffic stop and *resisted arrest* and officers recovered heroin and crack cocaine from the vehicle he was driving, PSR ¶ 40. While Cherry's medical condition is severe, there is no reason to believe that, if he recovers appreciably, he will turn away from his lifelong involvement in violent crime.

Since the § 3553(a) factors counsel against early release, and because the BOP is capable of caring for Cherry's medical needs, Cherry's motion for compassionate release is denied.

March 31, 2021

_____

Colleen McMahon
Chief Judge

8